UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MICHELE N.,[1]

    Plaintiff,

v.

COMMISSIONER,
Social Security Administration,

    Defendant.

Case No. 3:18-cv-00744-JO

OPINION AND ORDER

JONES, Judge:

  Michele N. (Plaintiff) seeks judicial review of the final decision by the Commissioner of Social Security (Commissioner) denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). I affirm the Commissioner's decision.

---

[1] Agency documents spell Plaintiff's first name "Michele," e.g., Tr. 7, Tr. 15, although the parties' briefs spell her name "Michelle."
  In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member(s).

Page 1 - OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). When the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's decision if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

## THE ALJ'S FINDINGS ON THE FIVE-STEP SEQUENTIAL INQUIRY

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled, the ALJ uses a five-step sequential inquiry. *See* 20 C.F.R. § 416.920.

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 26, 2014, the application date. Tr. 20.

At step two, the ALJ found Plaintiff had the severe impairments of bilateral knee disorder; spine disorder; right shoulder disorder; fibromyalgia; respiratory disorder; obesity; depressive disorder; anxiety disorder with panic attacks; posttraumatic stress disorder; and personality disorder. Tr. 21.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 21. The ALJ then assessed Plaintiff's residual functional capacity (RFC), finding Plaintiff could perform a modified range of light work, able to lift no more than 20 pounds occasionally, and frequently lift, carry, push, and pull 10 pounds. Tr. 24. Plaintiff could sit for a total of 6 hours per 8-hour workday, and stand or walk for a total of no more than 2 hours per day. Plaintiff could frequently reach with her dominant right arm, with no reaching above shoulder level. She could understand, remember, and carry out simple instructions; have no more than occasional interaction with supervisors, coworkers, and the public; concentrate, persist, and maintain pace with no assembly-line work; and perform work that requires no more than simple work-related decisions in a routine work setting. Tr. 24.

At step four, the ALJ found Plaintiff had no past relevant work. Tr. 30.

At step five, the burden of production shifts from the claimant to the Commissioner. *Bustamonte v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.960(c)(2) (agency is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do"). The Commissioner must present evidence that the claimant can perform other work considering the claimant's RFC, age, education, and work experience. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

Here, based on the testimony of a vocational expert at the hearing, the ALJ found Plaintiff could perform occupations that exist in significant numbers in the national economy, including hand packager/inspector, electrical accessory assembler, and assembler. Tr. 31. The ALJ therefore found Plaintiff not disabled since August 2014, when she filed the application. Tr. 31.

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) discounting the severity of her subjective symptoms based on her activities of daily living and her sporadic mental health treatment; and (2) failing to resolve a discrepancy between the Dictionary of Occupational Titles and the testimony of the vocational expert. Pl.'s Opening Br. 4, ECF No. 14.

### I. Plaintiff's Subjective Statements About Her Symptoms

Plaintiff argues that the ALJ erred by not fully accepting her subjective statements about the severity of her symptoms. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, then "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). When evaluating a claimant's subjective symptoms, the ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *4. Here, I conclude that the ALJ gave specific, clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's subjective complaints.

## A. Physical Impairments

Plaintiff testified at the hearing that because of her physical impairments, including osteoarthritis and patellar tendinitis in both knees, severe back pain, right shoulder pain, and fibromyalgia, she could not "stand, sit, walk, bend over, squat, any of that for any length of time." Tr. 52. Plaintiff also testified that she could not reach overhead with her right arm because of shoulder problems, and suffered fatigue and soreness when using her right arm below shoulder height.

The ALJ found Plaintiff's allegations about the severity of her physical limitations were not consistent with the medical reports. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Commissioner*, 533 F.3d 1155, 1161 (9th Cir. 2008).

The ALJ cited objective medical evidence indicating that Plaintiff's physical impairments were not as severe as she alleged. The ALJ considered a 2015 report by Erik Maki, M.D., who examined Plaintiff and provided a functional assessment of her ability to work. Dr. Maki observed that Plaintiff was "easily able to transfer from the chair to the examination table," sat "comfortably and is able to take her shoes off without difficulty. She is able to walk to the examination room without difficulty." Tr. 321. She showed normal abilities to walk in tandem and on her toes and heels, to hop, and to squat. Tr. 322. She was also normal in straight leg raising, and there was no evidence of bilateral foot drop. Tr. 323. Out of 18 "classic" fibromyalgia tender spots, Dr. Maki found only one, on Plaintiff's right shoulder, was positive. Tr. 323.

Dr. Maki diagnosed low back pain, probably muscular in origin; bilateral knee pain; right shoulder pain; fibromyalgia; hand and wrist arthritis; and panic disorder/post-traumatic stress

disorder (PTSD). Tr. 323-24. Dr. Maki found that none of these physical impairments limited Plaintiff's ability to work. Dr. Maki concluded that Plaintiff could stand and walk up to 6 hours per workday; sit without limitations; lift up to 50 pounds occasionally and 25 pounds frequently; frequently climb, balance, stoop, kneel, crouch and crawl; and frequently reach, handle, finger, and feel. Tr. 324.

The ALJ gave "some weight" to Dr. Maki's opinions "because he is a medical doctor, who examined the claimant and assessed her limitations." Tr. 27. The ALJ did not fully accept Dr. Maki's opinions because "recently submitted treatment records show the claimant's impairments have slightly worsened. I have accounted for this in the residual functional capacity by restricting her to light exertional work with additional vocational limitations." Tr. 27.

The ALJ also cited medical imaging studies conducted in 2016. As to knee impairments, Dean Gardella, M.D., reported "mild degenerative bony spurring along the superior aspect of the patella," and noted that the screw installed in each tibia appeared intact, with joint spaces preserved. Tr. 459. As to right shoulder pain, Dr. Gardella found only mild degenerative spurring in the shoulder joint. Tr. 455. As to Plaintiff's back pain, the ALJ noted that "[m]edical imaging of the claimant's spine shows she has mild lumbar degenerative disc disease." Tr. 25; Tr. 471 (2016 report of Terri Reichner, M.D., finding x-rays showed normal lumbar spine alignment, "mild disc narrowing," and "[m]ild degenerative disc disease").

The ALJ gave little weight to the check-box evaluation filled out by physician's assistant Barbara Martin, which Martin completed in 2014 and reaffirmed in 2016. Tr. 353-56; Tr. 484. Martin stated that Plaintiff could sit for 2 hours per 8-hour day and stand or walk for 2 hours per day; needed unscheduled break periods; needed to change position every hour; could occasionally lift and carry 10 pounds; and could not tolerate even a low-stress job. Martin also

stated that Plaintiff's impairments would interfere with her attention and concentration two-thirds of the day, and that she would miss more than two days per month.

As a physician's assistant, Martin is not an "acceptable medical source," but rather an "other source." *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (acceptable medical sources are generally limited to physicians and other qualified specialists). An ALJ may discount testimony from an "other source" by giving germane reasons for doing so. *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016).

In discounting Martin's opinions, the ALJ properly resolved conflicts in the medical evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ found that Martin provided little analysis to support her opinions, and failed to consider whether Plaintiff's symptoms would improve if she sought consistent treatment for her impairments. The ALJ also found that Martin's opinions were not consistent with the medical evidence or with Plaintiff's "wide activities of daily living." Tr. 29. The ALJ found Martin "appear[ed] to base her opinions on the claimant's subjective complaints rather than on objective medical evidence." Tr. 29.

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Commissioner*, 807 F.3d 996, 1006 (9th Cir. 2015). Here, the ALJ explained his interpretation with "a detailed and thorough summary of the facts and conflicting clinical evidence." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). I find that substantial evidence supports the ALJ's interpretation of the medical opinion evidence.

The ALJ also found that Plaintiff's daily activities were not consistent with the limitations she asserted. The ALJ noted Plaintiff reported that she could clean her home, perform household chores, walk two blocks before needing to stop and rest, shop for groceries,

and raise her 16-year-old son, which indicated Plaintiff could "perform a wide variety of activities" despite her impairments. Tr. 25.

In her reply brief, Plaintiff argues that the ALJ relied on her "reports of her activities," which "suggests that the ALJ found her reporting reliable and supports [Plaintiff's] argument that the ALJ should also have credited her alleged limitations." Pl.'s Reply Br. 6, ECF No. 16. This argument misconstrues the ALJ's function, which is to weigh the evidence and resolve ambiguities or conflicts. *Edlund*, 253 F.3d at 1156. The ALJ is not required either to accept or reject all of a claimant's testimony, but rather may give testimony appropriate weight, as the ALJ did here. *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's decision to give only partial weight to claimant's pain testimony).

Plaintiff also contends that "in context, [Plaintiff's] activities are not inconsistent with her alleged limitations." Pl.'s Reply Br. 5. Although there is evidence supporting Plaintiff's interpretation of the record, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Batson v. Commissioner*, 359 F.3d 1190, 1196 (9th Cir. 2004). If, as is true here, the evidence supports more than one rational interpretation, this court must defer the ALJ's reasonable decision. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Burch*, 400 F.3d at 680-81 (upholding ALJ's decision although evidence of claimant's daily activities "may also admit of an interpretation more favorable" to claimant).

## B. Mental Impairments

The ALJ found that Plaintiff suffered from severe mental impairments, including depressive disorder, anxiety disorder with panic attacks, PTSD, and personality disorder. Tr. 21. At the hearing, Plaintiff testified that she had two to fifteen panic attacks per day, each attack lasting from two to fifteen minutes. Tr. 45. She testified that she was uncomfortable about leaving her house, and "can't be around people, a lot of people." Tr. 51.

The ALJ reviewed the medical record and found that "treatment notes contain only intermittent complaints of mental symptoms; there are few objective findings indicative of significant functional restrictions." Tr. 27. The ALJ found Plaintiff had reported that her symptoms "significantly improve when she takes her medications as prescribed." Tr. 27. The ALJ also found Plaintiff's medical records "show she only sporadically attends mental health appointments," and "her mental symptoms are primarily aggravated by situational stressors," such as financial issues or eviction. Tr. 27.

The ALJ considered a psychological consultative examination performed for the agency by Angela Plowhead, Psy. D., in 2015. Tr. 326-31. Plaintiff told Dr. Plowhead that her chief complaints were anxiety, depression, PTSD, and borderline personality disorder. Tr. 326. Plaintiff's medications included methadone, hydrocodone, clonazepam, prazosin, and lamotrigine. Tr. 327.

Dr. Plowhead reported that Plaintiff "maintained consistent and focused attention throughout the interview." Tr. 328. Dr. Plowhead stated that Plaintiff appeared to give "substandard effort to questions asked regarding her intellectual functioning," so the testing results may have underestimated her actual ability. Tr. 330.

Dr. Plowhead diagnosed generalized anxiety disorder, panic disorder, and rule out major depressive disorder. Dr. Plowhead opined that Plaintiff could "perform complex and detailed tasks and accept instruction from a supervisor," noting that Plaintiff performed the complex tasks necessary to care for her teenaged son, manage a household, and obtain healthcare. Tr. 331. Dr. Plowhead opined that Plaintiff "would likely maintain regular attendance in the workplace or complete a normal workday or workweek without interruptions." Tr. 331. Dr. Plowhead found it "unlikely," however, that Plaintiff could consistently interact with coworkers and the public or deal with the usual workplace stressors, noting that Plaintiff's "interactions towards others are markedly suspicious and guarded." Tr. 331.

The ALJ gave limited weight to Dr. Plowhead's opinions. The ALJ did not adopt Dr. Plowhead's opinion that Plaintiff would be unlikely to deal with workplace stressors. The ALJ explained that Dr. Plowhead appeared to base her opinion on Plaintiff's subjective complaints rather than objective medical evidence. The ALJ also found that Dr. Plowhead's opinions were not consistent with her own examination findings, including her finding that Plaintiff would be able to maintain regular attendance and complete a normal workday or workweek without interruptions. Tr. 28. The ALJ also gave little weight to Dr. Plowhead's opinion that Plaintiff could perform complex and detailed tasks, because more recent records showed Plaintiff's mental impairments slightly worsened in this particular ability. Tr. 28.

The ALJ found that Plaintiff's activities of daily living were not consistent with her allegations about her mental impairments. Tr. 27-28. An ALJ may rely on a claimant's activities of daily living as a reason to discount the severity of the alleged symptoms. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). As with Plaintiff's physical

impairments, substantial evidence supports the ALJ's reliance on activities of daily living in discounting Plaintiff's subjective mental health symptoms.

I conclude that the ALJ's findings on Plaintiff's mental impairments are supported by substantial evidence. Lack of cooperation during an examination, such as Plaintiff's "substandard effort" during Dr. Plowhead's testing, is a clear and convincing reason to discount a claimant's allegations. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Plaintiff argues that the ALJ improperly cited her sporadic history of mental health treatment as a reason to discount her subjective allegations. The ALJ's reasoning has support in the record, however. For example, Dr. Plowhead stated that because of Plaintiff's "apparent lack of value and investment in current psychological treatment I do not believe she will demonstrate marked improvement in the next 12 months. However, if she were to be compliant with treatment her prognosis would be good." Tr. 330.

Plaintiff also argues that the ALJ should have consulted the record to determine why she did not consistently obtain mental health treatment. Plaintiff notes that during the period at issue, she had episodes of homelessness, although "she did regularly address her mental health concerns with her primary care physician." Pl.'s Reply Br. 7. Plaintiff has not cited evidence that her failure to seek mental health treatment was caused by her impairments.

Even if the ALJ erred in citing Plaintiff's sporadic mental health treatment history as a reason to give her symptom allegations less weight, the ALJ's other reasons, such as the lack of objective medical evidence, are sufficient to support his decision. Any error was harmless. *See Carmickle*, 533 F.3d at 1162 (harmless error if the ALJ relied on an improper reason for discounting subjective complaints when the other remaining reasons properly supported the decision).

## II. The ALJ's Assessment of Vocational Expert Testimony

At the fifth step of the sequential process, the Commission has the burden of producing evidence that the claimant can work in other jobs. 20 C.F.R. § 416.960(c)(2). In making this determination, the ALJ may use the services of a vocational expert. 20 C.F.R. § 416.966(e). The vocational expert's testimony "may properly be used to show that the particular jobs . . . may be ones that a particular claimant can perform." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The Dictionary of Occupational Titles (DOT), "a resource compiled by the Department of Labor that details the specific requirements for different occupations, guides the analysis. If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)). Only conflicts that are "obvious or apparent" trigger the ALJ's duty to inquire further. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017). "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez*, 844 F.3d at 808. "[T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." *Id.*

Here, the vocational expert testified that a person with Plaintiff's limitations could work as a hand packager/inspector, electrical accessories assembler, and assembler. Tr. 53-54. The vocational expert noted that the DOT categorized the three jobs as light because of their lifting requirements, not their standing and walking requirements, and that the jobs could be performed seated most of the day. Tr. 54. The vocational expert testified that if the worker required a

Page 12 - OPINION AND ORDER

sit/stand option, there would be 20% fewer jobs. Tr. 55. The vocational expert testified that his testimony was consistent with the DOT. Tr. 54. The ALJ relied on the vocational expert's testimony in finding Plaintiff was not disabled. Tr. 31.

Plaintiff now argues that there is a discrepancy between the vocational expert's testimony and the DOT. The DOT's descriptions for the three jobs at issue include frequent reaching, while the ALJ found Plaintiff could not reach above her shoulder with her right arm, although she could frequently reach below her shoulder with her right arm. Pl.'s Opening Br. 9.

The vocational expert did not specifically address overhead reaching. The DOT's descriptions for each of the three jobs do not mention overhead reaching. *See* Inspector and Hand Packager, DOT No. 559.687-074, 1991 WL 683797 (job requires inspecting molded plastic products such as bottle caps for defects, discarding defective products, and packing remaining products); Assembler, Electrical Accessories I, DOT No. 729.687-010, 1991 WL 679733 (job requires assembling mechanical parts of electrical equipment such as switches); Assembler, Production, DOT No. 706.687-010, 1991 WL 679074 (job requires bench or line assembly operations to mass produce items).

The Ninth Circuit addressed a similar issue in *Gutierrez*. There, the job at issue was cashier, and the DOT description stated frequent reaching was required, but did not mention overhead reaching. The claimant, like Plaintiff here, could not lift her right arm over her shoulder. *Id.*, 844 F.3d at 808. The Ninth Circuit applied a common-sense approach, concluding that there was no obvious or apparent conflict between the DOT job description and the vocational expert's testimony because cashiers rarely need to reach overhead. *Id.* (ALJ not required to ask the vocational expert to address "unlikely situations or circumstances"). Similarly, here the evidence does not show that the three jobs in dispute would routinely require

overhead reaching. I conclude that the ALJ properly relied on the vocational expert's testimony in finding Plaintiff was not disabled.

## CONCLUSION

The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

DATED February 10th, 2020.

Robert E. Jones
United States District Judge